UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HECTOR MARQUEZ, | ) | Case No. 1:09CV1620 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| MAGGIE BRADSHAW[1], Warden, | ) | **Report and Recommendation** |
| Richland Correctional Institution, | ) | **of Magistrate Judge** |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Hector Marquez ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF Dkt. #1.  Petitioner seeks relief for alleged constitutional violations that occurred during his Ashtabula County, Ohio Court of Common Pleas conviction for Complicity to Commit Burglary, in violation of Ohio Revised Code ("O.R.C.") § 2911.12.  ECF Dkt. #1; *see also* ECF Dkt. #11, Ex. 1, 3, 4.  On December 14, 2009, Respondent filed a Return of Writ.  ECF Dkt. #11.  Petitioner did not file a traverse.

On January 26, 2011, the case was referred to the undersigned for a Report and Recommendation.  For the following reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition, in its entirety, with prejudice.

---

[1]    Petitioner is now housed at Richland Correctional Institution, where Maggie Bradshaw is the warden.  *See http://www.drc.ohio.gov/OffenderSearch/Search.aspx* (search for Hector Marquez); *http://www.drc.ohio.gov/Public/rici.htm*.  "[T]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . ."  *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the Petition should be amended to name Maggie Bradshaw as respondent.

## I.  SYNOPSIS OF THE FACTS

The Eleventh District Court of Appeals of Ohio set forth the facts of this case on direct appeal. These binding factual findings "shall be presumed to be correct", and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denie*d, 119 S.Ct. 2403 (1999). As set forth by the Ohio Court of Appeals, the facts are:

{¶ 2} This matter arose from a burglary which occurred at 1422 Ohio Avenue, Ashtabula Ohio. On the morning of April 2, 2007, Jean Stark's dogs began barking prompting her to look out her front window. She observed two men walking together down the street on which her house is located. She then observed the two men split. She watched as the smaller man, later identified as Esteven Velez, walked up the driveway of the home of John DiGiacomo, Stark's neighbor across the street. The taller man, later identified as appellant, continued walking down the street. Stark observed Velez approach DiGiacomo's side door. Velez then walked around to the front of the home and onto the porch. Stark testified Velez peered into the front window and began to bang on the front door. Stark knew DiGiacomo was not home. When she observed Velez return to the side door, she phoned the police.

{¶ 3} While she was on the phone with the Ashtabula Police Department's dispatch, she observed Velez kick in the side door. Stark also observed appellant walking back toward the home. Stark stated appellant appeared to be looking around, as though he was watching for someone. When the police arrived, Stark observed Velez jump over a neighbor's fence and begin running while carrying a brown bag.

{¶ 4} Sergeant Perry Johnson of the Ashtabula City Police Department arrived at the scene. He observed appellant on the sidewalk in front of the DiGiacomo residence. As Sgt. Johnson approached, appellant began to quickly walk away. The officer then pulled his vehicle in front of appellant to stop him. Appellant provided Sgt. Johnson with his name and, when asked what he was doing, he replied "nothing." Appellant stated he was alone and denied entering the burglarized home. Appellant was placed in Sgt. Johnson's police cruiser so the officer could confirm his identity.

{¶ 5} Ashtabula police officer James Henry was also dispatched to the location. Once he arrived, he was told a suspect had fled on foot through the home's backyard. Officer Henry proceeded in the direction the suspect ran. He soon noticed an individual walking through a nearby yard. He stopped the individual, later identified as Velez, and asked what he was doing. Velez responded that he was working for "Hector." Officer Henry observed a knife and a bag in Velez's hand. The officer ordered Velez to drop the weapon and set the bag on the ground. Once other officers arrived, Velez was arrested. The officers discovered the bag contained a live parrot.

{¶ 6} Sgt. Johnson eventually spoke with Mr. DiGiacomo, whose home had been ransacked. DiGiacomo also told Johnson his parrot was missing. According to Johnson, a large sack of rice had been dumped onto the floor and the sack was missing. It was later established that the sack was used by Velez to transport the stolen bird from the home.

{¶ 7} After being transported to the police station, Velez was Mirandized and interviewed by Sergeant Joe Cellitti. Although Velez initially denied involvement in the burglary, he eventually confessed to breaking into the home. Velez admitted that appellant was with him when he broke into the home, but testified at trial appellant did not tell him to burglarize the house. During the interview, Velez told Cellitti that he and appellant were going to burglarize a friend's mother-in-law's home. However, when they arrived, they found the home was occupied. They subsequently came across the DiGiacomo residence. Appellant told Velez that "he watched the house" and knew nobody was home because no vehicles were in the driveway. Velez then forcibly entered the home and stole DiGiacomo's bird.

{¶ 8} On April 23, 2007, appellant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree. Appellant pleaded not guilty. A jury trial commenced and, on June 20, 2007, appellant was found guilty of complicity to commit burglary. Appellant was subsequently sentenced to a seven year term of incarceration.

ECF Dkt. #11, Ex. 11; *State v. Marquez*, No. 2007-A-0085,2008 WL 4561147 at ¶¶2-8 (Ohio App. 11 Dist. Oct. 10, 2008), unreported.

## II.     PROCEDURAL HISTORY

### A.     State Trial Court

On April 23, 2007, the prosecuting attorney for Ashtabula County Ohio filed an indictment charging Petitioner with one count of Burglary. ECF Dkt. #11, Ex. 1. A jury found Petitioner guilty of Complicity to Commit Burglary. ECF Dkt. #11, Ex. 3; *see* O.R.C. § 2923.03(F) ("A charge of complicity may be stated in terms of this section, or in terms of the principal offense."). Accordingly, the trial court adjudged Petitioner guilty of Complicity to Commit Burglary. ECF Dkt. #11, Ex. 4. On October 25, 2007, the trial court sentenced Petitioner to seven years of imprisonment. ECF Dkt. #11, Ex. 5.

### B.     Direct Appeal

On November 26, 2007, Petitioner filed a notice of appeal from the trial court's conviction. ECF Dkt. #11, Ex. 6. On February 20, 2008, Petitioner filed a brief in support of his direct appeal, and raised the following assignment of error:

I.     The jury's verdict finding the appellant guilty of Complicity to Commit Aggravated Burglaryt [sic] was against the manifest weight of the evidence.

ECF Dkt. #11, Ex. 7. On March 7, 2008, the state filed a brief in opposition. ECF Dkt. #11, Ex. 8.

On April 16, 2008, the Eleventh District Court of Appeals issued a judgement entry granting a motion Petitioner had filed requesting appointment of new appellate counsel. ECF Dkt. #11, Ex.

9. The court granted the newly appointed attorney leave to file a supplemental brief. *Id.*

On June 5, 2008, Petitioner filed a supplemental appellate brief, raising the following additional assignments of error:

> 2. The trial court erred by not providing a translator for Appellant Hector Marquez and the Witness Esteven Velez.

> 3. The trial court erred in not determining Appellant's competency when his incompetency was suggested to the court.

ECF Dkt. #11, Ex. 10. On October 14, 2008, the appellate court affirmed Petitioner's conviction. ECF Dkt. #11, Ex. 11.

### C.    Supreme Court of Ohio

On December 1, 2008, Petitioner filed a notice of appeal and a brief in support of jurisdiction in the Supreme Court of Ohio, raising the following propositions of law:

> I. The jury's verdict finding the appellant guilty of complicity to commit burglary was against the manifest weight of the evidence.

> II. The trial court erred by not providing a translator for appellant Hector Marquez and the witness Esteven Velez.

> III. The trial court erred in not determining appellant's competency when his incompetency was suggested by the court.

ECF Dkt. #11, Ex. 12, 13. On December 17, 2008, the state filed a brief in response. ECF Dkt. #11, Ex. 14. On March 4, 2009 , the Supreme Court of Ohio dismissed the appeal as not involving a substantial constitutional question. ECF Dkt. #11, Ex. 15.

### D.    Motion for New Trial

On February 20, 2008, Petitioner filed a motion for a new trial in the Ashtabula County Court of Common Pleas. ECF Dkt. #11, Ex. 16. On March 17, 2008, the state filed a brief in response. ECF Dkt. #11, Ex. 17. On April 1, 2008, the trial court denied Petitioner's motion. ECF Dkt. #11, Ex. 18.

### E.    Motion to Reopen Direct Appeal Pursuant to Rule of Appellate Procedure 26(B)

On December 11, 2008, Petitioner filed a motion in the Eleventh District Court of Appeals seeking leave to reopen his direct appeal based upon ineffective assistance of counsel. ECF Dkt.

#11, Ex. 19.  On December 16, 2008, the state filed a response.  ECF Dkt. #11, Ex. 20.  On March

4, 2009, the appellate court denied Petitioner's motion.  ECF Dkt. #11, Ex. 21.

On April 14, 2009, Petitioner filed a notice of appeal to the Supreme Court of Ohio.  ECF

Dkt. #11, Ex. 22.  He also filed a memorandum in support of jurisdiction, raising the following

propositions of law:

> I.  Trail Counsel's failure to request an interpreter for appellant prior to the commencement of the trial constituted ineffective assistance that prejudiced appellant.
>
> II.  Evidence was insufficient as a matter of law to convict appellant of Complicity to Burglary, R.C. 2911.12(A)(2) when the element of "present or likely to be present" was not proved beyond a reasonable doubt.
>
> III.  Appellate counsel were ineffective for failing to bring to the court of appeals attention the aforementioned propositions of law, where appellant was prejudiced in violation of his federal and state constitutional rights under the Sixth and Fourteenth Amendment of the U.S. Constitution and Article I, Section 10 of the Ohio Constitution.

ECF Dkt. #11, Ex. 23.  On April 23, 2009, the state filed a brief in response.  ECF Dkt. #11, Ex. 24.

On June 3, 2009, the Supreme Court of Ohio affirmed the appellate court's ruling.  ECF Dkt. #11,

Ex. 25.

### F.      28 U.S.C. § 2254 Petition

On July 8, 2009, Petitioner filed the instant petition for a writ of habeas corpus.  ECF Dkt.

#1.  Petitioner has raised the following grounds for relief:

> **GROUND ONE:**       The jury's verdict finding petitioner guilty of complicity to commit burglary was [against] the manifest weight of the evidence.
>
> Supporting Facts:       Co-defendant Velez gave two different versions of the involvement or non-involvement of petitioner. During the trial of petitioner Velez testified that petitioner was not involved in the burglary.  Velez further stated that he himself was high on heroin at the time of the burglary.   There was, however, another witness that observed petitioner with Velez prior to the burglary.  She was able to confirmed [sic] that petitioner and Co-defendant and Velez parted ways when Velez went up  the driveway of the home in question.  Moreover, during the trial of petitioner Velez testified that he was told be [sic] petitioner not to brake [sic] into the home.

**GROUND TWO:**  The trial court erred by not providing a translator for petitioner.

Supporting Facts:  After petitioner was found guilty, he [sic] then defense attorney alerted the trial court that he was unable to understand the criminal proceedings against him.  That there was a language barrier and that petitioner was unable to communicate with his counsel.  Defense counsel conveyed to the trial court that the only form of communication between them was via letters and that to her understanding another inmate translated the letters for petitioner.

**GROUND THREE:**  The trial court erred in not determining the competency of petitioner when his incompetence was suggested by the court.

Supporting Facts:  After the verdict the trial court became aware the petitioner was under the care of Dr. Tran, a psychiatrist.  Petitioner was also taking psychotic medication, namely Lepraxo [sic] and Seroquel.  The court was sufficiently concerned about petitioner's mental state that the trial court adjourned the sentencing until a later date in order to have Dr. Tran available in Court.  When sentencing occurred, Dr. Tran was not present, the suggestion of the incompetency was not mentioned and the relationship between counsel and petitioner was such that legal and professional meaningful communication was not occurring.

**GROUND FOUR:**  Trial counsel's failure to request an interpreter for petitioner prior to the commencement of the trial constituted ineffective assistance of counsel that prejudiced him.

Supporting Facts:  The petitioner's first language is Spanish, and he very [sic] limited English language abilities which made him unable to effectively communicate with his defense counsel during the critical stages of the criminal proceedings.  He indicated to his counsel of his inability to understand the proceedings in the English language.  During the course of the criminal proceedings against petitioner [sic] defense counsel did alerted [sic] the court of confusion petitioner was having in understanding who was saying what? and to whom? in the English language.

**GROUND FIVE:**  Evidence was insufficient as a matter of law to convict petitioner of Complicity to Burglary, R.C. 2911.12(A)(2) when the element of "present or likely to be present" was not proved beyond reasonable doubt [sic].

-6-

| | |
|---|---|
| Supporting Facts: | The testimony adduced at trial revealed that the victim was at work in a regular working schedule. No testimony was offered that anyone else was expected to be at the home of the victim during the time when the burglary occurred, or that during the time when the home was burglarized there was an expectancy or likelihood of someone being present. |
| **GROUND SIX:** | Appellate counsel's were ineffective for failing to bring to the attention of court of appeal [sic] during petitioner's direct appeal the aforementioned Ground four and Ground Five where petitioner federal constitutional rights were implicated during the criminal course of the proceedings. |
| Supporting Facts: | Petitioner had two (2) appellate counsel during his direct appeal.  They failed to present and argue on direct appeal that his trial counsel was deficient to the prejudice of petitioner for not asking to the trial court at the beginning of the criminal proceedings that petitioner was unable to read, write and understand the English language and that he needed a bilingual interpreter so that counsel and petitioner could effectively communicate during the preparation of, and during the trial itself. Moreover, both appellate counsels failed to present and argue that evidence were insufficient as a matter of law to sustain a conviction for complicity to commit burglary as the element of "present or likely to be present" was no proved beyond reasonable doubt [sic]. |

ECF Dkt. #1.  On December 14, 2009, Respondent filed a Return of Writ.  ECF Dkt. #11.  Petitioner did not file a traverse.

## III.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

Respondent does not raise any procedural bars in this case.  ECF Dkt. #11.  Therefore, the undersigned will not address the issue in further detail.

### IV.   STANDARD OF REVIEW

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion and procedural default, AEDPA governs this Court's review of the instant case.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus.  The AEDPA provides:

(d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1)   resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.*  Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application

-8-

must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;

2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or

3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or

4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'

E.   Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact.  *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law.  *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## V.    ANALYSIS

### A.    Manifest Weight of the Evidence (Ground One)

In Ground One, Petitioner contends that the jury's verdict finding him guilty of complicity to commit burglary was against the manifest weight of the evidence.  ECF Dkt. #1 at 5.  The undersigned recommends that the Court dismiss this ground for relief because a claim that a conviction is against the manifest weight of the evidence claim is not cognizable in federal habeas corpus review. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir.1985); *Walker v. Timmerman-Cooper*, No. 1:05CV103, 2006 WL 3242101 (S.D. Ohio Oct. 5, 2006).  Manifest weight claims are derived from purely state law whereby the state appellate court sits as a "thirteenth juror and disagrees with

-10-

fact finder's resolution of conflicting testimony" and finds that the "jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Tibbs v. Florida*, 457 U.S. 31, 41-47 (1982); *State v. Thompkins*, 78 Ohio St.3d 380, 389, 678 N.E.2d 541, 546-548 (1997)(superseded by state constitutional amendment on other grounds, *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), cert. denied 523 U.S. 1125 (1998)), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).  Accordingly, Ground One of the instant petition lacks merit and should be dismissed with prejudice.

### B.      Claims Related to Interpreter (Ground Two, Four, Six)

Petitioner contends that the trial court erred by not providing him with an interpreter.  ECF Dkt. #1 at 5. Further,  Petitioner contends that trial counsel was ineffective for failing to request an interpreter prior to the commencement of trial.  *Id.* at 6.  Lastly, Petitioner contends that appellate counsel was ineffective for failing to raise appellate claims based upon the trial court's error and trial counsel's error.  *Id.* at 7.

The Sixth Circuit Court of Appeals has held that "Rulings on the appointment and qualifications of an interpreter do not reach constitutional proportions."  *Fairbanks v. Cowan*, 551 F.2d 97, 99 (6th Cir. 1977).  In the context of a federal prosecution, the Sixth Circuit has held that "**As a constitutional matter** the appointment of interpreters is within the district court's discretion." *U.S. v. Sanchez*, 928 F.2d 1450, 1456 (6th Cir. 1991) (emphasis added), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369, 58 (6th Cir.2002), *quoting United States v. Bennett*, 848 F.2d 1134, 1144 (11th Cir.1988).  Therefore, a federal habeas court must consider if the challenged conviction was in conformity with state law.  *Fairbanks*, 551, F.2d at 99; *see also*, *Rodriguez v. Trombley*, No. 2:06-CV-11795, 2010 WL 120222 at *15 (E.D.Mich.,2010).

Under Ohio law, "Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person. * * * ".  O.R.C. §2311.14 (A)(1).  "The question of a defendant's ability to comprehend English is one of fact."  *State of Ohio v. Vazquez*, NO. 37381, 1978 WL 217987 at *4 (Ohio App. 8 Dist. June 22,1978).  On review, an Ohio appellate court considers

-11-

whether any problems were brought to the trial court's attention at the time of trial.  *Id*.  Another probative consideration that Ohio courts look to is testimony from other witnesses concerning the defendant's ability to converse in English.  *Id*.

In this case, the appellate court noted trial counsel's representations at sentencing that Petitioner could neither read nor write in English and that these deficiencies encumbered Petitioner's ability to understand "the process of the pre-sentence investigation and remains confused about the process."  ECF Dkt. #11, Ex. 11 at ¶37.  The appellate court noted that trial counsel never made a specific request for an interpreter.  *Id*. at ¶38.  Nevertheless, the appellate court went on to note that "counsel's remarks did not suggest appellant, due to the alleged language barrier, had difficulty communicating with her, understanding her, or comprehending the nature of the proceedings."  *Id*.  The court further reasoned that the lack of an ability to read or write does not necessarily imply that Petitioner was unable to understand the proceedings and participate in his own defense.  *Id*.  Ultimately, the appellate court stated "[a]s counsel never indicated she was unable to meaningfully communicate with appellant or vice versa, the trial court did not abuse its discretion in failing to appoint an interpreter."  *Id*.

The undersigned recommends that the Court find the Ohio Court of Appeals' rationale to be reasonable.  There is no basis on this record for concluding that the court unreasonably applied federal law.  At the "Attempted Sentencing Hearing," the prosecuting attorney indicated that Petitioner had been through the sentencing process numerous times, and was recently sentenced at the end of the year[2] without any apparent problems.  (Attempted Sentencing Hearing Tr. at 4).  Additionally, the court heard testimony from the nurse at the jail where Petitioner was housed.  *Id*. at 6-10.  Nurse Sartini testified that she spoke with Petitioner on the telephone from time to time and he was able to understand without a problem.  *Id*. at 8.  When the trial court asked if Nurse Sartini ever noticed any inability regarding Petitioner's understanding, Nurse Sartini stated that she hesitated in responding because there is sometimes a language barrier.  *Id*. at 9.  However, she concluded that

---

[2]     As a matter of reference, the undersigned notes that the Attempted Sentencing Hearing was held on July 31, 2001.

Petitioner "seems to understand" when she tries to get her point across.  *Id*.

Additionally, as Respondent notes, the credibility of Petitioner's claim is questionable since he waited until after trial and only raised an issue at the time of sentencing.  ECF Dkt. #11 quoting *Valladares v. U.S.*, 871 F.2d 1564, 1566 (11th Cir. 1989) ("To allow a defendant to remain silent throughout the trial and then, upon being found guilty, to assert a claim of inadequate translation would be an open invitation to abuse.").  Here, Petitioner claimed that his inability to read and write in English caused confusion during the presentence report process.  (Attempted Sentencing Hearing Tr. at 3).  However, Petitioner cites no law, and the undersigned is not aware of any law, that would have entitled him to receive a written translation of the presentence investigation documents.  *Cf. U.S. v. Arias*, No. 1:06-CR-00338-JG-3, 2010 WL 4537916 at *3 (N.D.Ohio Nov. 3, 2010) (Gwin, J.) slip op. ( on consideration of a written federal plea agreement, this Court held: "Petitioner Arias cites no case law to support his argument that a written translation of a plea agreement must be provided. The Court is aware of no such requirement. Rather, courts regularly uphold guilty pleas and waivers of appeal as valid and knowing where the plea agreement is read to the defendant by an interpreter in open court.") (citations omitted).  And, as previously noted, there was no indication that trial counsel was unable to communicate with Petitioner from a verbal standpoint.  Therefore, the undersigned fails to see how an interpreter would have assisted Petitioner with understanding the written documents any more than his trial attorney did.

Although Petitioner claimed at the Attempted Sentencing Hearing that he did not understand the presentence investigation procedure, there were no apparent problems when he was ultimately sentenced.  At the final sentencing hearing, Petitioner's attorney indicated that he was not cooperating.  (Sentencing Hearing Tr. at 3.).  She indicated that "Mr. Marquez has not been cooperating with me.  He does not wish to communicate any instructions to me as to what I am to do at the sentencing and it's making it a very difficult process."  *Id*.  She stated that "Mr. Marquez is raising similar issues as to those he raised the last time before the Court," but she did not explicitly contend that he still lacked an understanding of the proceedings.  Defendant himself said nothing in that respect.  *Id*.  Trial counsel proceeded to argue mitigation.  *Id*. at 3-4.  At the end of the hearing,

-13-

the trial judge imposed a sentence, informed Petitioner of his appellate rights, including the right to appointed appellate counsel, and asked if Petitioner wished to have appellate counsel appointed. Petitioner responded "Yeah" without any questions regarding his rights or the procedure. *Id*. at 6-7.

On this record, it appears that any confusion regarding the presentence investigation procedure could have been attributed, at least in part, to Petitioner's uncooperative behavior.  It was therefore not unreasonable for the trial judge to decline the appointment of an interpreter.

Given the appellate court's analysis and the additional evidence cited above, the undersigned sees no basis for finding that the state court decisions were contrary to or an unreasonable application of clearly established federal law.  Accordingly, the undersigned recommends that the Court dismiss Ground Two in its entirety with prejudice.

Petitioner raises related claims of ineffective assistance of counsel in Grounds Four and Six. These claims present similar issues for the Court's consideration.  However, the undersigned will address the applicable standards of review separately, below.

### i.  Standard of Review for Petitioner's Claim of Ineffective Assistance of Trial Counsel (Ground Four)

In order to prevail on a claim of ineffective assistance of trial counsel, Petitioner bears the burden of showing that counsel's performance fell below an objective standard of reasonableness and counsel's ineffectiveness prejudiced his defense so as to deprive him of his right to a fair trial. *Strickland v. Washington*, 466 U.S. 668 (1984).  To warrant reversal of a conviction, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  Court scrutiny of defense counsel review must be "highly deferential." *Id*. at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).   Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984).

-14-

Typically, a habeas court reviews the state court's ruling for an unreasonable application of federal law.  In a case such as this, Petitioner, must show not only that trial counsel's strategy was unreasonable, but that the state appellate court's finding that his strategy was not unreasonable was itself unreasonable.  28 U.S.C. § 2254(d); *see Mooney v. Trombley,* 2007 WL 2331881 at *21 (E.D.Mich., Aug. 13, 2007), unreported.

Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996), quoting *Strickland,* 466 U.S. at 691, quoted in *Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir.1989), *cert. denied*, 495 U.S. 961 (1990).  "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992) (en banc), *cert. denied*, 508 U.S. 975 (1993).

### ii.       Standard of Review for Petitioner's Claim of Ineffective Assistance of Appellate Counsel (Ground Six)

A defendant is entitled to the effective assistance of appellate counsel in connection with his first appeal of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Mapes v. Tate*, 388 F.3d 187, 191 (6th Cir. 2004); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  The failure of appellate counsel to raise an issue can amount to constitutionally ineffective assistance.  *Whiting v. Burt*, 395 F.3d 602, 616 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004). While appellate counsel need not raise every nonfrivolous issue on direct appeal, *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983); *McFarland*, 356 F.3d at 710; *Joshua*, 341 F.3d at 441; *Buell v. Mitchell*, 274 F.3d 337, 352 (6th Cir. 2001), counsel still must exercise reasonable professional judgment in determining which issues to raise.  *Jones*, 463 U.S. at 753; *Joshua*, 341 F.3d at 441.  The presumption of effective assistance of appellate counsel will be overcome only when the ignored issues are clearly stronger than the issues presented.  *Joshua*, 341 F.3d at 441; *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel is not ineffective for failing to raise an issue that lacks merit.  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) ; *Greer v. Mitchell*, 264 F.3d 663,

-15-

676 (6th Cir. 2001); *Jones*, 463 U.S. at 751-52 (it is important for appellate counsel to "winnow[ ] out weaker arguments on appeal and focus[ ] on one central issue if possible, or at most on a few key issues.");  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (the ability to discern worthy claims from unworthy ones is the "hallmark of effective appellate advocacy.")  The Sixth Circuit has suggested that certain considerations be taken into account in determining whether counsel rendered ineffective assistance on appeal:

> (1) Were the omitted issues "significant and obvious"?
>
> (2) Was there arguably contrary authority on the omitted issues?
>
> (3) Were the omitted issues clearly stronger than those presented?
>
> (4) Were the omitted issues objected to at trial?
>
> (5) Were the trial court's rulings subject to deference on appeal?
>
> (6) Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
>
> (7) What was appellate counsel's level of experience and expertise?
>
> (8) Did the petitioner and appellate counsel meet and go over possible issues?
>
> (9) Is there evidence that counsel reviewed all the facts?
>
> (10) Were the omitted issues dealt with in other assignments of error?
>
> (11) Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes*, 388 F.3d at 191; *McFarland*, 356 F.3d at 711; *Martin v. Mitchell*, 280 F.3d 594, 605 (6th Cir. 2002).  Additionally, "a habeas court may also consider '[p]revailing norms of practice as reflected in American Bar Association standards and the like.' " *Franklin v. Anderson*, 434 F.3d 412, 429 (6th

Cir. 2006) quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984), *cert. denied*, 127 S. Ct. 941 (2007).

With respect to prejudice in the context of ineffective assistance of appellate counsel, the petitioner must show a reasonable probability exists that, except for his counsel's deficient performance, he would have prevailed on appeal. *Mapes*, 388 F.3d at 194. While this analysis requires an evaluation of the petitioner's underlying claims, it does not require a decision on these issues, but merely a determination that a reasonable probability exists that the petitioner would have prevailed on appeal. *Id.*

### iii.        Analysis (Grounds Four and Six)

In Ground Four, Petitioner asserts that trial counsel was ineffective for failing to request an interpreter prior to the commencement of trial. ECF Dkt. #1 at 6. In part of Ground Six, Petitioner contends that appellate counsel was ineffective for failing to raise a claim related to trial counsel's purported ineffectiveness. *Id.* at 7.

Petitioner has offered no evidence showing that trial counsel was aware of any communication problems prior to the commencement of trial. In fact, the record indicates that she only became aware of any purported difficulties *during* the jury trial. (Attempted Sentencing Hearing Tr. at 3) (emphasis added).

In this case, defense counsel stated that Petitioner was able to communicate with her and cooperate in her defense. (Attempted Sentencing Hearing Tr. at 13). She indicated that she only became aware of her client's inability to read and write in English during the process of the presentence investigation. *Id.* at 3. At the final sentencing hearing, counsel again indicated that she was able to communicate with her client, but it was difficult because he was not cooperative. (Sentencing Hearing Tr. at 3.). On this record, the undersigned sees no basis for determining that defense counsel was ineffective in not requesting the assistance of an interpreter. The Court has no evidence indicating that Petitioner's purported difficulties were the result of a language barrier, as opposed to his own uncooperativeness, which was documented on the record. Accordingly, the

-17-

undersigned recommends that the Court find no unreasonableness in trial counsel or appellate counsel's representation.

Further, the undersigned recommends that the Court find that the appellate court's findings were not unreasonable. ECF Dkt. #11, Ex. 11 at ¶¶37-39, Ex. 21. The appellate court found that trial counsel did not suggest that Petitioner had difficulty communicating with her, understanding her, or comprehending the nature of proceedings. *Id*. at 2. This finding was supported by the record. (Attempted Sentencing Hearing Tr. at 3.). Accordingly, the undersigned recommends that the Court find that the Ohio appellate court was not unreasonable when it determined that counsel's representation was not unreasonable.

Lastly, Petitioner has not demonstrated prejudice resulting from any purported deficiencies by counsel. Petitioner has made no showing that an appointed interpreter would have affected the outcome of his trial. Given the indications that counsel was able to verbally communicate with Petitioner, the undersigned recommends that the Court find no prejudice in trial counsel's purported failure to seek an appointed interpreter or in appellate counsel's purported failure to raise the related issue on appeal. Further, the Court should defer to the judgment of counsel who was situated to determine whether an interpreter would have benefitted her communication with Petitioner. Since the record reflects that some of Petitioner's communication difficulties were attributable to his own uncooperativeness, the undersigned recommends that the Court find no prejudice.

For the foregoing reasons, the undersigned recommends that the Court DISMISS Ground Two in its entirety, Ground Four in its entirety, and Ground Six, insofar as it relates to Petitioner's interpreter-based claim with prejudice.

### C.     Incompetency Claim (Ground Three)

In Ground Three, Petitioner contends that the trial court erred in not determining his competency after the verdict was rendered and the court learned that he was under the care of Dr. Tran, a psychiatrist. ECF Dkt. #1 at 6. Petitioner contends that he was taking psychotic medications and the trial court was sufficiently concerned that it adjourned the sentencing hearing until a later

date in order to have Dr. Tran available to testify.  *Id*.  Petitioner contends that, at the time of sentencing, Dr. Tran was not present and the suggestion of incompetency was not mentioned.  *Id*.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial."  *Medina v. California* 505 U.S. 437, 439 (1992); citing *Drope v. Missouri*, 420 U.S. 162 (1975); *Pate v. Robinson*, 383 U.S. 375 (1966).  The United State Supreme Court has held that, where the evidence warrants it, a failure to provide a defendant with an adequate hearing on the issue of competence to stand trial violates the constitutional  right to a fair trial and merits habeas relief.  *Pate*, 383 U.S. at 385-87.  The Sixth Circuit has held that the amount of evidence required to entitle a defendant to a hearing is "substantial."  *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010) quoting *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006).   "The standard for competence to stand trial is whether the defendant 'has sufficient  present  ability  to  consult  with  his  lawyer  with  a  reasonable  degree  of  rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.' "  *Finley v. Rogers*, 116 Fed.Appx. 630, 2004 WL 2633591 at **2 ( 6th Cir. 2004), unreported, quoting *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Further, the Sixth Circuit has held:

> A determination of competence is a factual finding, to which deference must be paid. *Thompson v. Keohane*, 516 U.S. 99, 110-11, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but ... even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). "[R]egardless of whether we would reach a different conclusion were we reviewing the case de novo, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir.2001).

*Filiaggi*, 445 F.3d at 858.

"The test for whether the trial court erred in not holding a proper [competency] hearing is whether a reasonable judge in that position would have 'experienced doubt with respect to competency to stand trial.' "  *Eley*, 604 F.3d at 966 citing *Filiaggi*, 445 F.3d at 858. The facts of this case do not demonstrate a basis for finding an error by the trial judge.  At the Attempted Sentencing

-19-

Hearing, trial counsel stated:

> . . . my client's informed me that due to his medications that he's currently taking, that he doesn't understand what's going on and that he is unable to recall the answers to certain questions I've asked him in preparation for this hearing today.

(Attempted Sentencing Hearing Tr. at 3).  This occurred after the trial judge observed Petitioner throughout the entire trial.  Further, the trial judge called the prison nurse, who testified that she has observed Petitioner over a period of time. *Id*. at 8.  She further testified that he understands what she communicates without a problem. *Id*. at 8, 9.  Lastly, she testified that she would be surprised to hear that, as a result of his medications, Petitioner was having problems understanding simple questions and understanding sentencing proceedings. *Id*. at 10.  Given the foregoing, the undersigned believes the record fails to establish that a reasonable trial judge would have experienced doubt with respect to Petitioner's competency.

Petitioner contends that the trial court was sufficiently concerned about his mental state that it adjourned the sentencing until a later date.  ECF Dkt. #1 at 6.  However, the record reflects that is was defense counsel who requested Dr. Tran's presence.  (Attempted Sentencing Hearing Tr. at 12.).  Further, defense counsel made no mention of the issue at the final sentencing hearing. *See* Sentencing Hearing Tr.

The appellate court thoroughly addressed this issue and concluded as follows:

> {¶ 42} Appellant contends, under his final assignment of error, the trial court committed reversible error in not seeking a competency evaluation after defense counsel, during sentencing, explained to the court appellant was on medications which allegedly compromised his ability to comprehend the proceedings. We disagree.

> {¶ 43} It is a basic principle of due process that a criminal defendant who is not legally competent shall not be subjected to trial. *Pate v. Robinson* (1966), 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815. A defendant is competent when he has " 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and * * * has a rational as well as factual understanding of the proceedings against him.' " *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433, 1995-Ohio-310, quoting *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. Pursuant to R.C. 2945.37(B), the issue of competency may be raised by the court, prosecutor, or defense. Under the statute, however, a hearing is required only where objections are raised prior to trial. If the issue is raised during trial, R.C. 2945.37(B) mandates a hearing "only for good cause shown."

-20-

{¶ 44} Whether a trial court should hold a competency hearing after the commencement of trial is a matter within the trial court's discretion and will not be reversed absent evidence that the court abused its discretion. *State v. Rhaman* (1986), 23 Ohio St.3d 146, 156, 492 N.E.2d 401.

{¶ 45} Here, the record does not reflect anyone raised the issue of appellant's competency before trial. Moreover, neither the court, defense counsel, nor the prosecutor expressed any concern relating to appellant's competency during appellant's jury trial. Rather, the issue was first broached by defense counsel during the July 31, 2007 "attempted sentencing hearing." On record, defense counsel explained to the court that his medications limited his ability to understand the sentencing proceeding. Counsel told the court appellant had been under the care of a psychiatrist while in jail. The doctor prescribed "Lexapro, 20 milligrams a day, and Seroquel, 600 milligrams a day * * * " and saw appellant every two weeks. After the issue of appellant's competency was raised, the trial court summonsed the Ashtabula County Jail nurse, April Santini, to determine what, if any, effects the medication had on appellant's competency.

{¶ 46} Nurse Santini testified Lexapro is an antidepressant and Seroquel is an antipsychotic. She stated that the effects of Lexapro are "situational," i.e., he is either "depressed or he's not." She further testified the major side effects of Seroquel are fatigue, i.e., "[appellant is] sleeping pretty much quite a bit, all the time." According to Nurse Santini, appellant had been taking the medications for over a month and his dosage had not varied. With respect to appellant's cognitive abilities, Nurse Santini testified she speaks with him "from time to time" while he is medicated and "he understands what [she] communicate[s] to him without a problem." Nurse Santini testified she would be surprised if defendant was having difficulty "understanding simple questions and the [court] proceedings * * * " in which he was involved.

{¶ 47} After hearing the testimony of the nurse, the court concluded "there was no reason to delay going forward with sentencing." This conclusion is tantamount to finding appellant was legally competent at the time the matter was raised.FN1 We believe the trial court did not abuse its discretion in drawing this conclusion. The record does not demonstrate sufficient indicia of incompetency. Given the testimony of the nurse regarding the effects of appellant's medication and her testimony regarding appellant's ability to communicate with and understand her, there was no cause for a competency evaluation.

> FN1. The record reveals that there was no indication of incompetency at the time of appellant's jury trial. Specifically, his counsel stated, on record, that during his trial, appellant communicated and cooperated with his defense.

{¶ 48} Although the court found appellant could be sentenced on July 31, 2007, defense counsel explained appellant had requested Dr. Tran, his psychiatrist, be present. In light of this request, the court continued sentencing. In a judgment entry dated August 14, 2007, the court formally reset the sentencing hearing. The order further provided:

{¶ 49} "If counsel for the Defendant has a question concerning the Defendant's competency to be sentenced, she should file a motion in that regard and the Court will order the Defendant to be evaluated by the Forensic Psychiatric Center of Northeast Ohio, Inc."

{¶ 50} No motion was filed and appellant was subsequently sentenced on October 25, 2007. At the sentencing hearing, defense counsel did state that appellant was not cooperating with her and did not "wish to communicate any instructions to [her] as to what [she was] to do at the sentencing * * *." In light of these difficulties, counsel had filed a motion to withdraw, which the court denied.

{¶ 51} We recognize counsel expressed some concern about appellant's cooperation with her. However, counsel did not intimate that this failure to cooperate was a function of any confusion or lack of comprehension of the proceedings. Further, at no point during this hearing did appellant, his counsel, the prosecutor, or the court raise the competency question anew. With no motion before the court and without sufficient indicia of incompetence, we hold the trial court did not err in sentencing appellant without independently ordering a competency evaluation.

ECF Dkt. #11, Ex. 11 at ¶¶42-51.  As the appellate court noted, defense counsel did not request an evaluation by Dr. Tran when granted leave to do so, and she did not raise the issue at the final sentencing hearing.  Accordingly, the undersigned recommends that the Court find no basis for federal habeas relief and dismiss Ground Three in its entirety.

> **D.      Sufficiency of the Evidence and Related Ineffective Assistance of Counsel Claim (Grounds Five and Six)**

In Ground Five, Petitioner contends that there was insufficient evidence to support his conviction for complicity to commit burglary. ECF Dkt. #1 at 7.  Specifically, he contends that the element of whether the inhabitant was "present or likely to be present" was not proven beyond a reasonable doubt. *Id.*  Petitioner contends that the evidence shows that the victim was at work, under a regular schedule, and no testimony was offered to show that anyone else was expected to be in the home when the burglary occurred.  *Id.*

An allegation that the verdict was entered upon insufficient evidence states a claim under the due process clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, *reh'g denied*, 444 U.S. 890 (1979), *and In re Winship*, 397 U.S. 358 (1970). "In assessing the sufficiency of the evidence, we do not weigh the evidence, assess the credibility

-22-

of the witnesses, or substitute our judgment for that of the jury." *Id.* (internal citation omitted).  In order to establish an insufficiency of the evidence claim, "the relevant inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *U.S. v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) *quoting Jackson,* 443 U.S. at 319. "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006).  The inquiry is not whether the jury made the *correct* determination of guilt or innocence, but whether it made a *rational* decision to acquit or convict. *Williams v. Haviland,* No. 1:05CV1014, 2006 WL 456470, *3 (N.D.Ohio Feb. 24, 2006), citing *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).  A court should interfere with a jury verdict only to the extent necessary to guarantee the fundamental protections of due process of law.  *Scott,* 209 F.3d at 885 *quoting Jackson,* 443 U.S. at 319.

The Ohio Revised Code provides, in its pertinent part:

2911.12 Burglary.
(A) No person, by force, stealth, or deception, shall do any of the following:

\*       \*       \*

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;

O.R.C. §2911.12(A)(2).  Of note, Petitioner was not convicted of complicity in aggravated burglary. ECF Dkt. #11 at ¶13.  Nevertheless, consideration of caselaw analyzing that statute is helpful, as the aggravated burglary statute contains very similar language regarding the "present or likely to be present" element.  O.R.C. § 2911(A) ("No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, **when another person other than an accomplice of the offender is present,**") (emphasis added).  In fact, the burglary statute contains the even broader language: "No person, by force,

-23-

stealth, or deception, shall do any of the following:. . .  Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person **when any person other than an accomplice of the offender is present <u>or likely to be present</u>**, . . ." O.R.C. § 2911.12(A)(2) (emphasis added).

In the context of considering an aggravated burglary conviction, the Southern District of Ohio has considered the requirements of the statutory element requiring that "person other than an accomplice of the offender is present" (O.R.C. § 2911.11(A)):

> Because aggravated burglary, as defined under Ohio law, is "designed to protect homes where the danger of harm is greatest" the possible penalty is higher than that for ordinary burglary ( *Id.* quoting *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745, 750 (Ohio 1979)). Aggravated burglary in Ohio requires the state to prove both that the structure was a permanent or temporary habitation and that the structure was one in which a person was present or likely to be present ( *Id.* citing *Wilson* at 750). Once the state proves that a permanent or temporary habitation has been burglarized, any assumption that a person was likely present would "unconstitutionally presume the existence of an element of the offense" ( *Id.* quoting *State v. Fowler*, 4 Ohio St.3d 16, 445 N.E.2d 1119, 1121 (Ohio 1983)). However, the jury may draw reasonable inferences from the evidence presented as to whether someone was likely to be present on the day in question ( *Id.*).
>
> . . . The Ohio Supreme Court has held that a person is likely present in a dwelling where: "[T]he state proves that an occupied structure is a permanent dwelling house which is regularly inhabited, and that such house was burglarized when the family was temporarily absent ..." *State v. Kilby*, 50 Ohio St.2d 21, 361 N.E.2d 1336 (Ohio 1977).
>
> In *State v. Walters*, No. 2775-M, 1998 WL 668378, at *2-3 (Ohio Ct.App., Sept. 30, 1998), the court found a likelihood that a person was present where one of the victims was at work and the other victim returned after the perpetrator had left the house because "the evidence support[ed] the inference that either could have returned throughout the course of the day." Yet, where victims were at work all day and the prosecutor failed to inquire whether the victims ordinarily returned home during the day or whether others had access to the dwelling, the state failed to satisfy its burden. *State v. Pate*, No. 53746, 1988 WL 43287 at *4 (Ohio Ct.App., May 5, 1988). In instances where the victim is out of town, the courts determine whether someone else had access to the burglarized residence. See e.g., *State v. Weber*, No. 97APA03-322, 1997 WL 798299 at *3 (Ohio Ct.App., Dec. 23, 1997).

*Hargrove v. Haviland*, No. 1:02CV00703, 2005 WL 1379098 at *4 (S.D.Ohio June 8, 2005) unreported.

In the case at bar, the appellate court did not address a sufficiency of the evidence claim. ECF Dkt. #11, Ex. 11; *see also* ECF Dkt. #11 at 28.  However, the court did note evidence of record

in considering Petitioner's claim that his conviction was against the manifest weight of the evidence. ECF Dkt. #11, Ex. 11 at ¶¶ 22-25.  The appellate court's summary demonstrated that a likelihood existed that a person other than the offender was present:

> {¶ 22} The state presented evidence of eyewitness Jean Stark, the victim's neighbor. Mrs. Stark testified, on the morning of April 2, 2007, she observed two men walking together toward the home of her neighbor, John DiGiacomo. Once in front of the home, the two men split. While Velez walked towards the home, appellant kept walking, but, according to Stark, was "looking around * * * just to see if anything was going on."

> {¶ 23} According to Stark, Velez walked up DiGiacomo's driveway and walked toward the porch. Once on the porch, Velez looked in the windows, and knocked on the door. He subsequently went to a side door; Stark testified she observed him "step back and take his leg and kick the door three times to break it in." According to Stark, as Velez broke in the home, appellant continued to pace back and forth in front of the home. She characterized appellant's behavior "looking around, like he was watching for something."

ECF Dkt. #11, Ex. 11 at ¶¶22-23.  Additionally, the victim testified that the house was his permanent home, he worked about a half a mile or two minutes away, and he would sometimes come home for lunch.  Tr. at 224.  The victim stated that a friend lived in the house with him.  *Id*.  Viewing this evidence in the light most favorable to the state, it is clear a reasonable trier of fact could have determined that any person other than an accomplice of the offender was present or likely to be present at the time of the burglary.  Accordingly, the undersigned recommends that the Court dismiss Ground Five in its entirety with prejudice.

Given the foregoing analysis, the undersigned also recommends that the Court find no merit in Petitioner's claim of ineffective assistance of appellate counsel based upon a purported failure to raise a claim related to the sufficiency of the evidence.  Petitioner has failed to demonstrate deficient performance or prejudice since the evidence adduced at trial was sufficient to support a conviction. Therefore, the undersigned recommends that the Court dismiss Ground Six insofar as it asserts the ineffective assistance of appellate counsel based upon a purported failure to raise a claim related to the sufficiency of the evidence.

## VI.    CONCLUSION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: March 4, 2011                                    */s/ George J. Limbert*
                                                       GEORGE J. LIMBERT
                                                       UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

-26-